# EXHIBIT 1

RENO ARABO
MARKO LAW
220 W CONGRESS ST, FL 4TH
DETROIT MI 48226-3213

## USPS CERTIFIED MAIL







9436 0098 9864 3576 6534 29

RES. AGT.: DAVID LEONARD
SPECTRUM HEALTH | COREWELL
HEALTH-WEST
100 COREWELL DRIVE NW, MAIL
CODE 6481
GRAND RAPIDS MI 49503

Memo/Reference - david

# JM MARKO LAW

MARKOLAW.COM                                    P. (313) 777-7LAW    F. (313) 470-2011

**December 17, 2025**

**SENT VIA CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**
Spectrum Health d/b/a Corewell Health - West
Res. Agt.: David Leonard
100 Corewell Drive NW, Mail Code 6481
Grand Rapids, MI 49503

      **RE:**   **Yamelkis David v Spectrum Health d/b/a Corewell Health - West**
             **Case No.: 2025-21207-CD**

Dear Sir/Madam:

Enclosed please find a Summons, Jury Demand, and Complaint filed by our client, Yamelkis
David, against Spectrum Health d/b/a Corewell Health - West, with regard to the above-
referenced matter.

We look forward to receiving your response.

           Very truly yours,

           **MARKO LAW, PLLC**

           *Jessica L Hopkins*

           Jessica Hopkins, Legal Assistant to Reno Arabo
           220 W. Congress, Fourth Floor
           Detroit, MI  48226
           P: (313) 777-7777 / F: (313) 470-2011
           Direct: 313-379-6288
           Email: jessica@markolaw.com

jlh
Enclosure(s)

**MAIN OFFICE:**
220 W. CONGRESS | 4TH FLOOR
DETROIT MI 48226

*PLEASE DIRECT ALL MAIL*
*TO OUR **DETROIT** OFFICE*

**MID MICHIGAN OFFICE:**
600 EAST BROADWAY, SUITE 101
MOUNT PLEASANT MI 48858

RECEIVED AND FILED KENT COUNTY
CIRCUIT COURT - 12/16/2025 3:46:00 PM

## STATE OF MICHIGAN
## KENT COUNTY CIRCUIT COURT

YAMELKIS DAVID

      Plaintiff,

                                               Case No: 2025-21207-CD
                                               Honorable:

VS.

                                               **HON. SCOTT A. NOTO**
                                                   **(P-67833)**

SPECTRUM HEALTH d/b/a COREWELL HEALTH - WEST

      Defendant

RENO R. ARABO (P83692)
Attorney for Plaintiff
**Marko Law, PLLC**
220 W Congress St, 4th Floor
Detroit, MI 48226
(313) 777-7777 / F: (313) 470-2011
Renoa@markolaw.com

                  There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after being assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred or otherwise disposed of after having been assigned to a Judge in this Court.

## PLAINTIFF'S COMPLAINT

        NOW COMES Plaintiff, Yamelkis David, by and through her undersigned counsel, for her Complaint against the above-named Defendant, states as follows:

## JURISDICTION AND VENUE

      1.     Plaintiff, by reference, incorporates all previous paragraphs as if fully restated herein.

2.      This is an action for employment discrimination, retaliation, wrongful discharge, and violations of Michigan civil rights statutes.

3.      This Court has subject matter jurisdiction pursuant to MCL § 600.605, which grants the circuit court original jurisdiction in all civil claims where the amount in controversy exceeds $25,000.00, exclusive of costs, interest, and attorney fees.

4.      The amount in controversy in this action exceeds $25,000.00, exclusive of costs, interest, and attorney fees, making circuit court jurisdiction proper.

5.      Venue is proper in Kent County pursuant to MCL 600.1629.

## PARTIES

6.      Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

7.      Plaintiff Yamelkis David is an individual and resident of Wyoming, Michigan.

8.      Plaintiff is of Hispanic national origin.

9.      Plaintiff has a learning disability requiring reasonable accommodations in the workplace.

10.     At all relevant times, Plaintiff was employed by Defendant.

11.     Defendant Spectrum Health d/b/a Corewell Health - West is a Michigan healthcare system and/or corporation with its principal place of business located at 444 Michigan Street NE, Grand Rapids, MI 49503.

12.     Defendant is an "employer" within the meaning of Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq., the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101 et seq., and other applicable employment statutes because it employs more than one employee and, in fact, employs approximately 1,000 employees.

2

13.     At all relevant times, Defendant was Plaintiff's employer and had authority over her terms and conditions of employment, including hiring, discipline, accommodation decisions, and termination.

## FACTUAL ALLEGATIONS

14.     Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

### Employment History and Performance

15.     Plaintiff was initially hired by Defendant on July 9, 2018, as a Customer Service Associate.

16.     On January 9, 2022, Plaintiff was promoted to the position of Third Party Liability Analyst/Claims Coordinator.

17.     This promotion demonstrated Plaintiff's competence and satisfactory performance in her work for Defendant.

18.     In her role as Third Party Liability Analyst/Claims Coordinator, Plaintiff's job duties included processing claims, coordinating third-party liability matters, and managing claims administration tasks.

19.     Plaintiff performed her job duties satisfactorily.

20.     Plaintiff was authorized to telecommute and worked primarily from remote locations in the Grand Rapids, Michigan area.

21.     Plaintiff's immediate supervisors included Jose Rivas (Manager, Payment Integrity) and Cindy Fisher (Supervisor, Third Party Liability).

3

**National Origin Discrimination and Protected Activity**

22. On or about March 24, 2022, during a training session, Plaintiff was subjected to a derogatory comment about her national origin by a trainer.

23.      The comment was demeaning, offensive, and based on Plaintiff's Hispanic ethnicity.

24.      The comment created a hostile work environment for Plaintiff.

25.      On March 29, 2022, Plaintiff reported the discriminatory comment to management, specifically Jose Rivas and Cindy Fisher, and to Defendant's Human Resources department.

26.      Plaintiff's report of national origin discrimination constituted protected civil rights activity under federal and state law.

27.      Defendant opened an investigation into Plaintiff's discrimination complaint.

28.      Despite Plaintiff's complaint, other similarly situated non-Hispanic employees received more favorable treatment than Plaintiff.

29.      Specifically, Tanisha Jones, an African American employee in the Medicare or Medicaid area, was allowed a significantly longer training period than Plaintiff.

30.      Similarly, Stephanie, an African American employee who had been in TPL training approximately 3-4 years prior, was also provided a longer training period and more support than Plaintiff.

31.      Both Tanisha Jones and Stephanie were supervised by the same management team overseeing Plaintiff's training.

32.      The disparate treatment in training periods and support demonstrated that Plaintiff was being treated differently because of her national origin.

4

### Retaliation and Escalating Adverse Actions

33.    Immediately following Plaintiff's March 29, 2022 discrimination complaint, Defendant subjected Plaintiff to a pattern of retaliatory adverse employment actions.

34.    On May 10, 2022, Plaintiff received her first disciplinary action—a verbal warning regarding production.

35.    Prior to reporting the discrimination, Plaintiff had never been disciplined during her entire employment with Defendant.

38.    The May 10, 2022 verbal warning was entered into Defendant's employment system on the same day that Human Resources closed the discrimination investigation.

39.    The temporal proximity and suspicious timing of the discipline and the closure of the investigation on the same day suggests retaliation for Plaintiff's protected complaint.

40.    On June 10, 2022, Plaintiff received a First Written Notice for alleged performance issues.

41.    The June 10, 2022 First Written Notice had an effective date of June 30, 2022, demonstrating that Defendant prepared the disciplinary action at the beginning of the month with an effective date at the end of the month.

42.    The cited performance metrics in the disciplinary action included a requirement to maintain a 98% quality score and process 14 claims per hour.

43.    These specific metrics were newly emphasized and strictly enforced only after Plaintiff's discrimination complaint.

44.    On June 21, 2022, Plaintiff had a disciplinary meeting with Tracie Redrick, Director of Payment Integrity.

5

45.     During the June 21, 2022 meeting, Tracie Redrick was disrespectful and insulting to Plaintiff.

46.     Plaintiff sent an email to Tracie Redrick advising her that she had made Plaintiff feel bad through her disrespectful treatment.

47.     Following Plaintiff's email complaint, Tracie Redrick called Plaintiff to set up another meeting.

48.     During a subsequent meeting on June 21, 2022, Tracie Redrick apologized to Plaintiff and specifically asked if Plaintiff wanted more training.

49.     Plaintiff responded affirmatively that she would like additional training.

50.     Tracie Redrick then met with Human Resources and falsely reported that Plaintiff had declined additional training.

51.     When Human Resources followed up with Plaintiff about why she would decline training, Plaintiff stated that was a lie.

52.     Plaintiff provided a recording of the conversation to Human Resources to prove that Tracie Redrick had lied.

53.     Upon being confronted with proof of her dishonesty, Tracie Redrick and management focused on criticizing Plaintiff for recording the meeting rather than addressing the false statements made to Human Resources.

54.     On June 24, 2022, Plaintiff attended another meeting with Tracie Redrick and Cindy Fisher ostensibly about performance.

55.     The performance portion of the June 24, 2022 meeting lasted approximately five minutes.

6

56.    Tracie Redrick then immediately shifted the meeting to discuss the Human Resources investigation and the recording issue.

57.    Tracie Redrick became aggressive and threatening toward Plaintiff during the meeting regarding the recording.

58.    Tracie Redrick stated that the discrimination investigation case was closed and that she would no longer speak with Human Resources about Plaintiff's concerns.

59.    Plaintiff repeatedly stated during the meeting that she did not feel safe continuing the discussion without an human resources representative present.

60.    Tracie Redrick stated she did not care about Plaintiff's request and that HR was no longer involved.

61.    Tracie Redrick threatened Plaintiff that she could be fired for insubordination if she refused to speak directly with management without human resources present.

62.    The hostile, threatening, and aggressive treatment by Tracie Redrick during the June 24, 2022 meeting caused Plaintiff severe anxiety.

63.    June 24, 2022, was Plaintiff's last day worked before she was forced to take medical leave due to the hostile work environment and stress caused by Defendant's retaliatory conduct.

64.    Plaintiff developed anxiety attacks as a result of the workplace treatment.

65.    Plaintiff's mental health deteriorated significantly due to the retaliation and hostile work environment.

66.    Plaintiff required medical treatment and was unable to work due to the severe stress and anxiety caused by Defendant's unlawful conduct.

7

## Erroneous Termination and Benefits Disruption

67.     On October 7, 2022, while Plaintiff was still on medical leave, Plaintiff received an email through Defendant's Workday system indicating that her employment with Defendant would end as of October 7, 2022.

68.     The termination email was sent erroneously while Plaintiff was on protected medical leave.

69.     On December 15, 2022, Defendant discontinued Plaintiff's benefits, including group accident insurance, group critical illness insurance, 401K, and health insurance.

70.     Defendant required Plaintiff to immediately repay all premiums in order to continue coverage.

71.     The sudden benefits discontinuation and requirement to repay premiums caused Plaintiff significant financial distress.

72.     The benefits disruption also caused Plaintiff additional emotional distress while she was dealing with her health issues resulting from Defendant's discriminatory and retaliatory conduct.

73.     Plaintiff was forced to navigate the chaos of the erroneous termination and benefits problems while simultaneously coping with the anxiety and mental health issues caused by Defendant's unlawful treatment.

## Disability, Accommodation Request, and Denial

74.     Plaintiff has a learning disability that substantially limits major life activities, specifically related to concentration and verbalization tasks.

75.     Plaintiff's learning disability requires reasonable accommodations in the workplace to perform the essential functions of her job.

76.    On December 19, 2022, Plaintiff returned to work from medical leave.

77.    Upon her return to work, Defendant implemented a "Return to Work Plan" for Plaintiff dated December 15, 2022.

78.    The Return to Work Plan required Plaintiff to undergo a re-training period from December 19, 2022, through January 9, 2023.

79.    The Return to Work Plan required Plaintiff to engage in daily screensharing while working.

80.    The Return to Work Plan further required Plaintiff to constantly verbalize everything she was doing step-by-step during the screensharing sessions.

81.    The requirement to simultaneously perform work tasks while verbalizing each step directly conflicted with Plaintiff's disability.

82.    Plaintiff's learning disability makes it very difficult for her to concentrate on complex tasks while simultaneously verbalizing what she is doing.

83.    Every day during the re-training period, Plaintiff advised Cindy Fisher and other supervisors that she was unable to verbalize at the same time as performing the work process.

84.    Despite Plaintiff's repeated daily requests for accommodation, Cindy Fisher insisted that the screensharing and verbalization requirements were "policy" and that Plaintiff had to comply.

85.    In early January 2023, Plaintiff submitted doctor's paperwork to Defendant documenting her disability and need for accommodation.

86.    Plaintiff formally requested modifications to the screensharing and verbalization requirements as a reasonable accommodation for her disability.

87.    Plaintiff specifically requested that she be allowed to complete work tasks without being required to simultaneously verbalize each step.

88.    On February 3, 2023, Defendant informed Plaintiff that it could not provide the requested accommodation.

89.    Defendant made no effort to engage in the interactive process required by law to determine if alternative accommodations could be provided.

90.    Defendant made no effort to consider alternative accommodations that would allow Plaintiff to perform her job duties.

91.    Defendant failed to demonstrate that providing the requested accommodation would impose an undue hardship.

92.    Defendant's refusal to accommodate Plaintiff's disability was pretextual and motivated by animus stemming from Plaintiff's prior discrimination complaint.

93.    Defendant had previously accommodated other employees with various needs but refused to accommodate Plaintiff's legitimate disability-related needs.

### Continued Performance Monitoring and Termination

94.    From January 10, 2023, through February 7, 2023, Defendant subjected Plaintiff to intensive performance monitoring.

95.    During this monitoring period, Defendant held Plaintiff to different and higher standards than non-Hispanic, non-disabled employees.

96.    Plaintiff was assigned only one of the three pend codes that were typically assigned to employees in her position, yet was still expected to meet the same productivity metrics.

97.    Despite being assigned a reduced workload compared to other employees, Plaintiff was still held to the full productivity standard of 14 claims per hour.

98.     For the week of January 10-13, 2023, Plaintiff's quality score was 88.78% and her productivity was 9.45 claims per hour.

99.     For the week of January 17-20, 2023, Plaintiff's quality score was 85.71% and her productivity was 9.63 claims per hour.

100.    For the week of January 23-27, 2023, Plaintiff's quality score was 87.58% and her productivity was 9.56 claims per hour.

101.    For the week of January 30 through February 3, 2023, Plaintiff's quality score was 87.57% and her productivity was 8.65 claims per hour.

102.    For the week of February 6-10, 2023, Plaintiff's quality score was 88.10% and her productivity was 9.87 claims per hour.

103.    Plaintiff could not meet the required metrics without the accommodations she needed for her disability.

104.    Defendant refused to consider that Plaintiff's performance issues were directly related to the denial of reasonable accommodations.

105.    On March 2, 2023, Defendant issued Plaintiff a Final Written Notice.

106.    The Final Written Notice covered the period from March 2, 2023, through March 9, 2023.

107.    The Final Written Notice stated that failure to meet expectations could lead to further corrective action up to and including termination of employment.

108.    On April 11, 2023, Defendant terminated Plaintiff's employment.

109.    The stated reasons for Plaintiff's termination were performance issues and failure to meet quality and productivity metrics.

110.    The stated reasons for termination were pretextual.

11

111.    The true motivations for Plaintiff's termination were: (1) retaliation for her March 2022 discrimination complaint; (2) discrimination based on her Hispanic national origin; and (3) discrimination based on her disability and Defendant's failure to accommodate her disability.

112.    During her employment, Plaintiff had applied for internal job positions within Defendant's organization.

113.    Plaintiff was qualified for these internal positions but was not selected.

114.    On multiple occasions, including during the summer of 2022 and on or about January 25, 2023, Plaintiff was denied internal employment opportunities.

115.    Plaintiff was denied these opportunities in retaliation for her protected civil rights activity.

## Damages and Harm

116.    As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer economic damages.

117.    Plaintiff lost wages from the date of her termination through the present.

118.    Plaintiff lost employment benefits including health insurance, retirement contributions, and other fringe benefits.

119.    Plaintiff was forced to repay insurance premiums to Defendant, causing immediate financial harm.

120.    As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer severe non-economic damages.

121.    Plaintiff suffered and continues to suffer severe emotional distress as a direct result of Defendant's discriminatory and retaliatory conduct.

122.    Plaintiff experienced and continues to experience ongoing anxiety attacks triggered by the hostile work environment and unlawful treatment.

123.    Plaintiff's mental health significantly deteriorated as a result of Defendant's unlawful conduct, requiring ongoing medical treatment.

124.    Plaintiff suffered and continues to suffer humiliation and embarrassment as a result of the discriminatory treatment and wrongful termination.

125.    Plaintiff's professional reputation was damaged by the wrongful termination and false performance allegations.

126.    Plaintiff lost significant career opportunities as a result of the wrongful termination and retaliation.

127.    Plaintiff's injuries are ongoing and have profoundly impacted her life, livelihood, and future employment prospects.

## Exhaustion of Administrative Remedies

128.    Plaintiff timely filed charges of discrimination with the Michigan Department of Civil Rights (MDCR).

129.    Plaintiff's MDCR case numbers are: 626977, 632471, and 634454.

130.    Plaintiff's charges were dually filed with the Equal Employment Opportunity Commission (EEOC).

131.    Plaintiff's EEOC case numbers are: 23A-2022-00621, 23A-2023-00312, and 23A-2023-00504.

132.    Plaintiff's administrative charges alleged retaliation, national origin discrimination, disability discrimination, and failure to accommodate.

13

133.    Plaintiff received right-to-sue notices from the EEOC dated September 22, 2025 (for Charges 23A-2022-00621 and 23A-2023-00504) and December 2, 2025 (for Charge 23A-2023-00312), authorizing Plaintiff to file this lawsuit.

134.    Plaintiff has satisfied all jurisdictional prerequisites for filing this lawsuit.

## CAUSES OF ACTION

## COUNT I - NATIONAL ORIGIN DISCRIMINATION UNDER ELLIOTT-LARSEN CIVIL RIGHTS ACT AND TITLE VII
### (Defendant)

135.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

136.    The Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq., prohibits an employer from discriminating against an employee because of national origin with respect to terms, conditions, or privileges of employment.

137.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., prohibits an employer from discriminating against an employee because of national origin.

138.    MCL 37.2202(1)(a) specifically provides that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of ... national origin."

139.    Plaintiff is Hispanic and is a member of a protected class under both federal and state law.

140.    Defendant is an "employer" subject to the Elliott-Larsen Civil Rights Act and Title VII.

14

141.     At all relevant times, Plaintiff was qualified for her position as Third Party Liability Analyst/Claims Coordinator and performed her duties satisfactorily.

142.     On or about March 24, 2022, Plaintiff was subjected to a derogatory comment about her national origin by a trainer during a training session.

143.     The comment was demeaning, offensive, and based on Plaintiff's Hispanic ethnicity.

144.     The discriminatory comment created a hostile work environment for Plaintiff based on her national origin.

145.     Following the discriminatory comment and Plaintiff's complaint about it, Defendant subjected Plaintiff to disparate treatment compared to non-Hispanic employees.

146.     Specifically, Tanisha Jones, an African American employee, was allowed a significantly longer training period and received more support than Plaintiff.

147.     Similarly, Stephanie, an African American employee who had been in TPL training approximately 3-4 years prior, was also provided a longer training period and more support than Plaintiff.

148.     Both Tanisha Jones and Stephanie worked under the same management structure as Plaintiff but received more favorable treatment in terms of training duration and supervisory support.

149.     Plaintiff was held to stricter performance standards and given less training time than similarly situated non-Hispanic employees.

150.     Defendant's adverse actions toward Plaintiff, including the disciplinary actions, denial of additional training, hostile treatment by management, and ultimate termination, were motivated by Plaintiff's national origin.

15

151.    The reasons provided by Defendant for the adverse employment actions were pretextual and were a cover for national origin discrimination.

152.    Defendant's conduct was willful, intentional, and in reckless disregard of Plaintiff's protected rights under federal and state civil rights laws.

153.    As a direct and proximate result of Defendant's unlawful discriminatory actions in violation of the Elliott-Larsen Civil Rights Act and Title VII, Plaintiff has suffered and will continue to suffer irreparable injuries and damages including, but not limited to, loss of earnings and earning capacity, past and future lost wages, mental and emotional distress, embarrassment, humiliation, anxiety, and other damages.

## COUNT II - RETALIATION UNDER ELLIOTT-LARSEN CIVIL RIGHTS ACT AND TITLE VII
### (Defendant)

154.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

155.    MCL 37.2701 of the Elliott-Larsen Civil Rights Act prohibits retaliation against an employee who has opposed a violation or attempted violation of the Act or who has made a charge or testified in any proceeding under the Act.

156.    Title VII, 42 U.S.C. § 2000e-3, prohibits retaliation against an employee who has opposed any practice made unlawful by Title VII or who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

157.    On March 29, 2022, Plaintiff engaged in protected activity when she reported the derogatory national origin-based comment to management and Human Resources.

158.    Plaintiff's complaint about national origin discrimination constituted opposition to an unlawful employment practice under both the Elliott-Larsen Civil Rights Act and Title VII.

16

159.    Defendant was aware of Plaintiff's protected complaint.

160.    Beginning in or about December 2022 and continuing through February 2023, Plaintiff engaged in additional protected activity when she requested reasonable accommodations for her learning disability, submitted medical documentation supporting her need for accommodation, and complained to Defendant that it was refusing to accommodate her disability.

161.    Plaintiff's requests for reasonable accommodations and complaints regarding Defendant's failure to accommodate constituted protected activity under the Elliott-Larsen Civil Rights Act and Title VII.

162.    Defendant was aware of Plaintiff's disability-related accommodation requests and complaints.

160.    Following Plaintiff's protected complaint, Defendant subjected Plaintiff to a series of adverse employment actions.

161.    On May 10, 2022, Plaintiff received her first-ever disciplinary action—a verbal warning regarding production.

162.    The May 10, 2022 verbal warning occurred on the same day that Human Resources closed the discrimination investigation.

163.    The temporal proximity between Plaintiff's protected complaint and the first disciplinary action, combined with the suspicious timing of the investigation closure, demonstrates retaliatory animus.

164.    Prior to her March 29, 2022 protected complaint, Plaintiff had never been disciplined during her entire employment with Defendant since July 9, 2018.

165.    On June 10, 2022, Plaintiff received a First Written Notice for alleged performance issues, with an effective date of June 30, 2022.

17

166.     Between June 21 and June 24, 2022, Plaintiff was subjected to additional disciplinary meetings characterized by hostile and threatening conduct from management.

167.     During the June 24, 2022 meeting, Director Tracie Redrick became aggressive and threatening, refused to allow HR involvement, and threatened Plaintiff with termination for insubordination if she refused to meet without HR present.

168.     The hostile treatment during the June 24, 2022 meeting was so severe that it caused Plaintiff to suffer anxiety attacks and necessitated medical leave.

169.     On October 7, 2022, while on medical leave, Plaintiff received an erroneous termination notice through Defendant's Workday system.

170.     On December 15, 2022, Defendant discontinued Plaintiff's benefits including group accident insurance, group critical illness insurance, 401K, and health insurance, requiring immediate repayment of premiums.

171.     Defendant denied Plaintiff's applications for internal job positions on multiple occasions, including during summer 2022 and on or about January 25, 2023.

172.     On February 3, 2023, Defendant denied Plaintiff's request for reasonable accommodations for her disability.

173.     On April 11, 2023, Defendant terminated Plaintiff's employment.

174.     A direct causal connection exists between Plaintiff's protected activities, including her March 29, 2022 complaint of national origin discrimination and her December 2022 through February 2023 requests for disability-related accommodations, and the adverse employment actions taken by Defendant

18

175.    The temporal proximity between the protected activity and the series of adverse actions, particularly the May 10, 2022 verbal warning occurring the same day the investigation was closed, is evidence of retaliatory intent.

176.    But for Plaintiff's protected activities, including her complaint about national origin discrimination and her requests for reasonable accommodations for her disability, Plaintiff would not have been subjected to the disciplinary actions, hostile treatment, benefits disruption, denial of internal positions, denial of accommodations, and ultimate termination.

177.    The reasons provided by Defendant for the adverse employment actions were pretextual and were a cover for retaliation.

178.    Defendant's retaliatory actions were intentional, willful, and in disregard of Plaintiff's statutorily protected rights.

179.    As a direct and proximate result of Defendant's unlawful retaliatory actions in violation of the Elliott-Larsen Civil Rights Act and Title VII, Plaintiff has suffered and will continue to suffer irreparable injuries and damages including, but not limited to, loss of earnings and earning capacity, past and future lost wages, mental and emotional distress, embarrassment, humiliation, anxiety, and other damages.

## COUNT III - DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE UNDER MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT AND AMERICANS WITH DISABILITIES ACT
### (Defendant)

180.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

181.    The Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101 et seq., prohibits discrimination against qualified individuals with disabilities in employment.

182.    The Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., prohibits discrimination against qualified individuals with disabilities and requires employers to provide reasonable accommodations to such individuals.

183.    Plaintiff has a learning disability that substantially limits major life activities, specifically concentration and communication.

184.    Plaintiff's learning disability makes it very difficult for her to simultaneously perform complex work tasks while verbalizing each step of the process.

185.    Plaintiff is a qualified individual with a disability who can perform the essential functions of her position as Third Party Liability Analyst/Claims Coordinator with reasonable accommodation.

186.    Upon her return to work on December 19, 2022, Defendant required Plaintiff to engage in daily screensharing while simultaneously verbalizing everything she was doing step-by-step.

187.    The requirement to simultaneously perform work tasks while verbalizing each step directly conflicted with Plaintiff's disability.

188.    Plaintiff advised Defendant's supervisors every day during the re-training period that she was unable to verbalize at the same time as performing the work process due to her disability.

189.    In early January 2023, Plaintiff provided Defendant with doctor's paperwork documenting her disability and need for accommodation.

190.    Plaintiff formally requested modification of the daily screensharing and verbalization requirements as a reasonable accommodation for her disability.

191.    Plaintiff specifically requested that she be allowed to complete work tasks without being required to simultaneously verbalize each step.

192.    On February 3, 2023, Defendant summarily denied Plaintiff's accommodation request without considering alternatives.

193.    Defendant failed to engage in the interactive process required by law to determine if reasonable accommodations could be provided.

194.    Defendant made no effort to explore alternative accommodations that would allow Plaintiff to perform her job duties.

195.    Defendant failed to demonstrate that providing the requested accommodation would impose an undue hardship on its operations.

196.    Defendant discriminated against Plaintiff based on her disability by imposing requirements it knew she could not meet without accommodation and then terminating her for failing to meet those requirements.

197.    Alternatively, Defendant regarded Plaintiff as having a disability and discriminated against her based on that perceived disability

198.    Defendant's denial of Plaintiff's reasonable accommodation request was pretextual and motivated by animus stemming from Plaintiff's prior discrimination complaint.

199.    Defendant's actions violated Plaintiff's rights under both the Michigan Persons with Disabilities Civil Rights Act and the Americans with Disabilities Act.

200.    Defendant's conduct was willful, intentional, and in reckless disregard of Plaintiff's protected rights under federal and state disability discrimination laws.

21

201.     As a direct and proximate result of Defendant's unlawful discriminatory actions and failure to accommodate in violation of the Michigan Persons with Disabilities Civil Rights Act and the Americans with Disabilities Act, Plaintiff has suffered and will continue to suffer irreparable injuries and damages including, but not limited to, loss of earnings and earning capacity, past and future lost wages, mental and emotional distress, embarrassment, humiliation, anxiety, and other damages.

## COUNT IV - WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
### (Defendant)

201.     Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

202.     Michigan law recognizes a cause of action for wrongful discharge in violation of public policy where an employee is terminated for reasons that contravene a clear mandate of public policy.

203.     Plaintiff was terminated in violation of the public policy of Michigan, which prohibits: (1) discrimination based on national origin and disability; (2) retaliation for opposing unlawful discrimination; and (3) denial of reasonable accommodations to employees with disabilities.

204.     The public policy of the State of Michigan, which Defendant's actions violated, is embodied in statutes including, but not limited to:

   a. The Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq., which establishes a clear public policy against discrimination based on national origin and retaliation for opposing such discrimination.
   b. The Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101 et seq., which establishes a clear public policy against disability discrimination and in favor of providing reasonable accommodations to qualified individuals with disabilities.

22

c.  Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., which establishes federal public policy against national origin discrimination and retaliation.

d.  The Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., which establishes federal public policy against disability discrimination and in favor of providing reasonable accommodations.

205.  Plaintiff engaged in conduct protected by these public policies when she: (1) reported national origin discrimination; (2) opposed unlawful discriminatory practices; and (3) requested reasonable accommodations for her disability.

206.  Defendant's termination of Plaintiff was motivated by her adherence to, and exercise of, her rights under the public-policy mandates set forth above.

207.  Defendant terminated Plaintiff for engaging in protected activity and based on her protected characteristics of national origin and disability.

208.  Defendant's conduct in terminating Plaintiff for reporting discrimination, opposing unlawful practices, and requesting reasonable accommodations constitutes a wrongful discharge in violation of the clear and well-established public policy of the State of Michigan.

209.  As a direct and proximate result of Defendant's wrongful discharge of Plaintiff in violation of public policy, Plaintiff has suffered and will continue to suffer significant economic and non-economic damages, including lost wages, lost benefits, loss of earning capacity, emotional distress, humiliation, embarrassment, anxiety, damage to her professional reputation, and other damages.

## COUNT V - HOSTILE WORK ENVIRONMENT UNDER ELLIOTT-LARSEN CIVIL RIGHTS ACT AND TITLE VII
### (Defendant)

210.  Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

23

211.    The Elliott-Larsen Civil Rights Act and Title VII prohibit employers from subjecting employees to a hostile work environment based on protected characteristics and for engaging in protected activity, including opposition to unlawful discrimination and requests for reasonable accommodations.

212.    On or about March 24, 2022, Plaintiff was subjected to a derogatory national origin-based comment by a trainer.

213.    Following Plaintiff's complaint about the discriminatory comment, Defendant subjected Plaintiff to systematic retaliation including unprecedented disciplinary actions, hostile treatment by management, denial of training opportunities, and disparate treatment compared to non-Hispanic employees.

214.    During the June 24, 2022 meeting, Director Tracie Redrick became aggressive, threatening, and hostile toward Plaintiff, creating an intimidating and abusive work environment.

215.    Tracie Redrick refused to allow HR involvement in discussions about Plaintiff's concerns, threatened Plaintiff with termination for insubordination, and treated Plaintiff in a demeaning manner.

216.    Defendant denied Plaintiff's reasonable accommodation requests despite medical documentation supporting her need for accommodations.

217.    The pattern of discriminatory comments, retaliatory discipline, hostile management conduct, denial of accommodations, and disparate treatment created a hostile work environment that was severe and pervasive.

218.    The hostile work environment was based on Plaintiff's national origin, her opposition to national origin discrimination, and her engagement in protected activity, including her complaints to Human Resources and her requests for disability-related accommodations.

219.    The hostile conduct was objectively hostile and abusive, and Plaintiff subjectively perceived it as such.

220.    The hostile work environment interfered with Plaintiff's ability to perform her job and ultimately forced her to take medical leave due to severe anxiety attacks.

221.    Defendant knew or should have known of the harassment and hostile treatment to which Plaintiff was subjected.

222.    Defendant failed to take prompt, effective remedial action to address the hostile work environment.

223.    Instead of addressing the hostile work environment, Defendant retaliated against Plaintiff for complaining about the discrimination and hostile treatment.

224.    The hostile and abusive conduct intensified after Plaintiff complained of national origin discrimination and again after Plaintiff requested reasonable accommodations for her disability, demonstrating that the hostile work environment was retaliatory in nature and intended to punish Plaintiff for engaging in protected activity.

225.    Defendant's actions were willful, intentional, and in reckless disregard of Plaintiff's protected rights under federal and state civil rights laws.

226.    As a direct and proximate result of Defendant's creation and maintenance of a hostile work environment in violation of the Elliott-Larsen Civil Rights Act and Title VII, Plaintiff has suffered and will continue to suffer irreparable injuries and damages including, but not limited to, mental and emotional distress, anxiety, humiliation, embarrassment, loss of enjoyment of life, and other damages.

## COUNT VI - VIOLATION OF BULLARD-PLAWECKI EMPLOYEE RIGHT TO KNOW ACT
### (Defendant)

25

226.     Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

227.     The Bullard-Plawecki Employee Right to Know Act, MCL 423.501 et seq., provides employees with the right to review and obtain copies of their personnel files.

228.     Plaintiff is an "employee" as defined by the Act.

229.     Defendant is an "employer" as defined by the Act.

230.     MCL 423.503 provides that an employee has a right to review his or her personnel file and to obtain a copy of the information contained therein.

231.     Plaintiff and/or her counsel made a written request for Plaintiff's complete, unedited, and unredacted personnel file pursuant to MCL 423.502.

232.     Specifically, on October 27, 2025, Plaintiff's counsel sent a written request to Defendant for a complete, unedited, and unredacted copy of Plaintiff's personnel file pursuant to the Bullard-Plawecki Employee Right to Know Act.

233.     Defendant has failed or refused to provide the complete, unedited, and unredacted personnel file as required by law.

234.     Upon information and belief, Defendant has provided only partial or redacted records, or has failed to provide records at all.

235.     Defendant's failure to provide the complete personnel file is willful and knowing.

236.     MCL 423.511 provides remedies for violations of the Act, including actual damages, costs, and attorney fees.

237.     As a direct and proximate result of Defendant's violation of the Bullard-Plawecki Employee Right to Know Act, Plaintiff has suffered and will continue to suffer damages, including

but not limited to the inability to properly evaluate her claims, impediment to her ability to seek employment, and costs associated with enforcement of her statutory rights.

238.    Pursuant to MCL 423.511, Plaintiff is entitled to all available remedies, including actual damages, costs, and reasonable attorney fees.

## PRAYER FOR RELIEF

239.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

240.    Plaintiff has suffered and continues to suffer humiliation, embarrassment, anxiety, outrage, and disappointment as a result of Defendant's wrongful conduct, discrimination, retaliation, and unlawful termination.

241.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer harm, including but not limited to:

a) Economic damages, including past and future lost wages, loss of earning capacity, and lost employment benefits;

b) Out-of-pocket expenses related to medical treatment and care necessitated by Defendant's conduct;

c) Non-economic damages, including pain and suffering and emotional distress;

d) Mental anguish and severe anxiety, including anxiety attacks requiring medical treatment;

e) Ongoing deterioration of mental health caused by Defendant's discriminatory and retaliatory conduct;

f) Humiliation and embarrassment resulting from discriminatory treatment, retaliation, and wrongful termination; and

27

g) Such other economic and non-economic damages as may be proven at trial.

242.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer harm, including but not limited to:

a.    Loss of the ordinary pleasures of everyday life;

b.    Exemplary damages; and

c.    Other damages to be proven at trial.

243.    As a direct and proximate result of Defendant's conduct, Plaintiff has endured significant financial hardship, severe mental anguish, loss of social pleasure and enjoyment, along with profound embarrassment, humiliation, and mortification. These injuries and damages are serious and ongoing.

**WHEREFORE,** Plaintiff, Yamelkis David, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, SPECTRUM HEALTH d/b/a COREWELL HEALTH - WEST, and grant the following relief:

a.    Compensatory damages for economic losses, including back pay from the date of termination through the date of judgment, front pay, lost benefits, and other pecuniary losses, in an amount to be proven at trial;

b.    Compensatory damages for non-economic losses, including emotional distress, mental anguish, anxiety, humiliation, embarrassment, loss of reputation, and pain and suffering;

c.    Exemplary/punitive damages for Defendant's willful, malicious, and reckless conduct in violating Plaintiff's civil rights;

d.    Statutory damages and penalties, including those available under the Bullard-Plawecki Employee Right to Know Act;

e.  Reinstatement or, in the alternative, front pay in lieu of reinstatement;

f.  An order requiring Defendant to expunge all disciplinary records and adverse materials from Plaintiff's personnel file;

g.  Costs, interest, and reasonable attorney's fees pursuant to the Elliott-Larsen Civil Rights Act (MCL 37.2802), Michigan Persons with Disabilities Civil Rights Act (MCL 37.1606), Bullard-Plawecki Act (MCL 423.511), and as otherwise permitted by law;

h.  Pre-judgment and post-judgment interest as provided by law;

i.  Such other and further relief as this Court deems just, proper, and equitable.

Dated: December 11, 2025

> Respectfully submitted,
> **MARKO LAW, PLLC**
> By: _/s/ Reno R. Arabo_
> RENO R. ARABO (P83692)
> Attorney for Plaintiff
> 220 W Congress St, 4th Floor
> Detroit, MI 48226
> (313) 777-7777 / F: (313) 470-2011
> Renoa@markolaw.com

RECEIVED AND FILED KENT COUNTY
CIRCUIT COURT - 12/16/2025 3:46:00 PM

# STATE OF MICHIGAN
## KENT COUNTY CIRCUIT COURT

YAMELKIS DAVID

      Plaintiff,

                                Case No: 2025-21207-CD
                                Honorable:

VS.

                                  **HON. SCOTT A. NOTO**

SPECTRUM HEALTH d/b/a COREWELL HEALTH - WEST      **(P-67833)**

      Defendant

---

RENO R. ARABO (P83692)
Attorney for Plaintiff
**Marko Law, PLLC**
220 W Congress St, 4th Floor
Detroit, MI 48226
(313) 777-7777 / F: (313) 470-2011
Renoa@markolaw.com

---

## JURY DEMAND

      NOW COMES Plaintiff YAMELKIS DAVID, by and through her attorneys, MARKO

LAW, PLLC, and hereby demands a trial by jury in the above-captioned matter.

                            Respectfully submitted,

                            */s/ Reno R. Arabo*
                            Reno R. Arabo (P83692)
                            **MARKO LAW, PLLC**
                            Attorney for Plaintiff
                            220 W. Congress, Fourth Floor
                            Detroit, MI 48226
                            (313) 777-7777/ Fax: (313) 470-2011
                            Email: Renoa@markolaw.com

Date: December 16, 2025

RECEIVED AND FILED KENT COUNTY
CIRCUIT COURT - 12/16/2025 3:46:00 PM

Approved, SCAO

| | | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |

| STATE OF MICHIGAN<br>17th JUDICIAL DISTRICT<br>Kent JUDICIAL CIRCUIT<br>COUNTY | SUMMONS | CASE NUMBER<br>2025- 21207 -CD |

Court address
180 Ottawa Ave NW, Grand Rapids, MI 49503

Court telephone number
616-632-5220

Plaintiff's name, address, and telephone number

Yamelkis David

v

Defendant's name, address, and telephone number

Spectrum Health d/b/a Corewell Health - West
Res. Agt.: David Leonard
100 COREWELL DRIVE NW, MAIL CODE 6481
GRAND RAPIDS, MI 49503

Plaintiff's attorney bar number, address, and telephone number

Reno Arabo (P83692)
220 W Congress, Fourth Floor
Detroit, MI 48226
P: 313-777-7777 / F: 313-470-2011

HON. SCOTT A. NOTO
(P-67833)

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

It was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk.   **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>12/16/2025 | Expiration date*<br>3/17/2026 | Court clerk<br>LISA POSTHUMUS LYONS |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**Summons**  (3/23)

Case Number 2025- 21207 -CD

## PROOF OF SERVICE

**TO PROCESS SERVER**: You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

### CERTIFICATE OF SERVICE / NONSERVICE

☐ I served ☐ personally ☐ by registered or certified mail, return receipt requested, and delivery restricted to the addressee (copy of return receipt attached)    a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| | |
| **Place or address of service** | |
| | |
| **Attachments (if any)** | |
| | |

☐ I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of a copy of the summons and complaint, together with

_____ on _____
Attachments (if any)                                             Date and time

_____ on behalf of _____
Signature

_____
Name (type or print)

MCL 600.1910, MCR 2.104, MCR 2.105